### 26120. CARSON v. SUN LIFE ASSURANCE COMPANY.

DECIDED JULY 8, 1937.

*Douglas, Andrews & Cole, J. E. Feagin, Alfred S. Barnard,* for plaintiff. *Bryan, Middlebrooks & Carter,* for defendant.

FELTON, J. J. T. Carson sued the Sun Life Assurance Company of Canada for certain renewal commissions alleged to be due on a written contract of employment under which he had served as a soliciting agent. The contract between the parties contained in substance the following provisions: "If in any . . year the agent shall have put in force under the terms of this agreement an amount of new assurances specified, . . then, provided this agreement continue in force, he shall receive, during the next succeeding . . year only, commission on the premiums of assurances put in force under this agreement, and paid to the company in cash during such succeeding . . year, but no commission shall be payable on any premium beyond the tenth policy year. . . The term . . year shall be understood to mean any period of twelve months beginning December 13th, and ending December 12th. If this agreement shall remain in force for not less than one full year, and if the agent in each and every such year shall have put in force not less than . . of new assurances, and having the first year's premiums thereon paid to the company in cash, and shall have fully complied with conditions of this agreement, and be not indebted to the company, and if this

agreement be then terminated otherwise than by death, or by any cause not arising out of a violation of any of the conditions of this agreement, the agent shall be entitled to a commission of five per cent. on the renewal premiums on policies put in force under this agreement, paid to the company in cash subsequent to such termination, during a period equal to that for which this agreement may have been in force; providing, however, that should the company terminate this agreement on account of what amounts to improper or dishonest conduct on the part of the agent, the agent shall forfeit all rights, claims, and interest whatsoever hereunder. . . 10. Should the agent become connected with, or do business, directly or indirectly, for any other life-assurance company, this agreement, if then in force, shall at once terminate; and whether this agreement is in force or not, he shall forfeit and hereby specially waives any claim to commissions in virtue of this agreement. . . 14. No provision in this agreement shall be deemed to be waived or in any way modified, unless such waiver or modification be in writing and state specifically that it is intended to modify this agreement."

1. The plaintiff contends that the evidence authorized a finding that an officer of the insurance company maliciously forced him to resign, and that that amounted to an unauthorized and illegal discharge, as a result of which he would be entitled to the renewal commissions under the contract. The evidence showed that at the time of the agent's resignation the official who it was charged tried to force him to resign because of personal antagonism toward the agent had been replaced, and the agent admitted that the new manager was in no way responsible for his resignation. Under the circumstances we do not think the agent could be said to have been forced to resign when the cause of his troubles had been removed.

2. He next contends that the company waived its right to withhold from him the renewal commissions provided for in the contract, for the reason that it paid to him, after his resignation and after he was employed by another insurance company, the first year commissions on premiums paid in to the company after the resignation. Whether this position is otherwise untenable or not, it is indisputably untenable in view of section 14 of the contract, which is as follows: "No provision in this agreement

shall be deemed to be waived or in any way modified, unless such waiver or modification be in writing and state explicitly that it is intended to modify this agreement." There was no evidence as to any waiver or modification coming up to the requirements of this provision.

3. It is further contended that the agreement is void as contrary to public policy, in that it provides for a forfeiture of commissions if the agent does business for any other life-assurance society, there being no limit as to time or territory. The contract necessarily fixes a time limit on the restriction, for the reason that no commission is provided for beyond the tenth policy year. It is, however, absolutely unlimited as to territory, and under the authority of *Bonner* v. *Bailey,* 152 *Ga.* 629 (110 S. E. 875), void as being in illegal restraint of trade. The heart and substance of section 10 is to penalize the agent for representing another life-assurance company. That is its sole purpose. The contract provides that the agent would be entitled to the renewal commissions if he lived, was not discharged for improper conduct, and did not work for a rival company. The purpose of section 10 therefore could have no purpose other than that of a penalty. Its purpose was not to induce the agent to continue his services in the company, for the reason that the contract provided for continuation of commission payments after the termination of the contract. Having such an unlawful purpose, and being without limitation as to territory, the contract in principle is the same as if the agent for a consideration had agreed not to become employed by a rival company, and to pay a penalty on doing so. Some foreign jurisdictions have held to the contrary, but this court and the Supreme Court have not passed on the question. The decision in *Deacon* v. *Equitable Life Assurance Society,* 17 *Ga. App.* 74 (86 S. E. 91), is not in conflict with what is here ruled, for the reason that there was no penalty in that case restraining any occupational right. The contract simply provided that less commissions would be paid when the agent was not representing the company. The court erred in directing the verdict.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*